UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

BAIRON ORELLANA, JUAN CARLOS ORTIZ,
and KIRK ADAIR,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class*,

                          **Plaintiffs,**

                                                    **Case No.** 18-cv-7865 (VSB)(SN)

                          **-against-**

ONE IF BY LAND RESTAURANT LLC,
and DAVID GHATANFARD,

                          **Defendants.**

-----------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

C.K. Lee, Esq.
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs*
*and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

I.   PLAINTIFFS' NEW YORK LABOR LAW CLAIMS ................................................... 1

    A.   Failure to Pay Proper Minimum Wage and Overtime Due to Invalid Tip Credit....4

        *a.   Defendants Paid Non-Exempt Tipped Employees at Hourly Rates Less Than the Prevailing Minimum Wage* ..........................................................................4

        *b.   Defendants Paid Non-Exempt Tipped Employees at Improper Overtime Rates, Claiming an Excessive Tip Credit*......................................................................5

        *c.   Defendants Failed to Satisfy the Requirements for Claiming Tip Credit Allowance under the NYLL* ...........................................................................7

        *d.   Defendants' Illegal Tip Retention Under World Yacht Invalidates the Tip Credit* ......................................................................................................10

        *e.   Defendants Required Plaintiffs and Class Members to Perform Non-Tip Duties for More Than 20% of Their Workday, Invalidating the Tip Credit* ....10

    B.   Failure to Pay Spread of Hours Premium ................................................................12

    C.   Failure to Pay Wages Due to Time-Shaving............................................................12

    D.   Failure to Provide Proper Wage and Hour Notices .................................................13

    E.   Failure to Provide Proper Wage Statements ............................................................14

II.  PLAINTIFFS SATISFY ALL REQUIREMENTS OF RULE 23 ................................. 15

    A.   The Proposed Class Is Identifiable and Ascertainable ............................................17

    B.   The Class Is So Numerous that Joinder Is Impracticable ........................................18

    C.   Commonality and Typicality Requirements Are Met ..............................................18

    D.   Plaintiff Will Adequately Represent the Class ........................................................21

    E.   Common Questions of Law and Fact Predominate ..................................................22

    F.   Class Treatment Is Superior to Other Alternatives..................................................24

    G.   Plaintiffs' Counsel Should Be Appointed as Class Counsel ...................................25

III. CONCLUSION...........................................................................................................25

**Exhibits**

**Exhibit A** – Defendants' Payroll Records, Periods November 14-20, 2016 and
February 13-19, 2017.

**Exhibit B** – Defendants' Wage Statements for Plaintiff Bairon Orellana.

**Exhibit C** – Deposition Transcript of Lisa Gardner, deposed on August 23, 2019.

**Exhibit D** – Defendants' Payroll Records for Plaintiff Kirk Adair.

**Exhibit E** – Defendants' Wage-and-Hour Notice to Plaintiff Kirk Adair.

**Exhibit F** – Defendants' Wage-and-Hour Notice to Plaintiff Bairon Orellana.

**Exhibit G** – Defendants' Wage-and-Hour Notice to Plaintiff Juan Carlos Ortiz.

**Exhibit H** – Defendants' Webpage Listing Operating Hours.

**Exhibit I** – List of Plaintiffs and Class Members Derived from Defendants' 2016 and 2017
Payroll Records.

## TABLE OF AUTHORITIES

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ..................................... 15

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ......................................................... 2

*Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ...................................................... 17

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................. 18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000).......................... 21

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002)................................ 18

*Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 U.S. Dist. LEXIS 109373
 (S.D.N.Y. Sep. 30, 2010) ..................................................................................................... 13

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ...................................... 18

*Chen v. Xpresspa at Term. 4 JFK, LLC*, No. 15 Civ. 1347, 2016 U.S. Dist. LEXIS 20003
 (E.D.N.Y. Feb. 16, 2016)...................................................................................................... 25

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ................................................................... 14

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...................................... 17

*Cuzco v. F&J Steaks 37th St. LLC*, No. 13 Civ. 1859, 2014 U.S. Dist. LEXIS 72984 (S.D.N.Y.
 May 28, 2014)......................................................................................................................... 6

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008).................................. 18, 22, 23

*Diaz v. Amedeo Hotels Ltd. P'ship*, No. 12 Civ. 4418, 2016 U.S. Dist. LEXIS 41453 (E.D.N.Y.
 Mar. 29, 2016)........................................................................................................................ 9

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) ...................................................... 15

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)................................................ 16

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012).......................................... 15, 17, 22, 25

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011)..... 18, 23, 25

*Gonzalez v. Jane Roe Inc.*, No. 10 Civ. 1000, 2015 U.S. Dist. LEXIS 103370 (E.D.N.Y. July 15,
 2015) ............................................................................................................................... 4, 6, 7

*Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04 Civ. 22, 2008 U.S. Dist. LEXIS 27598
 (E.D.N.Y. Mar. 31, 2008) .................................................................................................... 24

*Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9,
 2010) .................................................................................................................................... 16

*Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335, 2012 U.S. Dist. LEXIS 186526
 (S.D.N.Y. Oct. 23, 2012) ............................................................................................... 16, 25

*Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. Mar. 2, 2008)
 .............................................................................................................................................. 23

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011)............................. 22

*Han v. Sterling Nat'l Mortg. Co.*, No. 09 Civ. 5589, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sep. 14, 2011) .................................................................................................................. 25

*Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014) ....................................... 9

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007).............. 17, 23, 24, 25

*In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389 (S.D.N.Y. 2008)...................................... 15

*In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ............................................ 14

*Jankowski v. Castaldi,* No. 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 11, 2006) ...................................................................................................................................... 14

*Kowalski v. YellowPages.com, LLC*, No. 10 Civ. 7318, 2012 U.S. Dist. LEXIS 46539 (S.D.N.Y. Mar. 31, 2012)....................................................................................................................... 15

*Leone v. Ashwood Fin., Inc*., 257 F.R.D. 343 (E.D.N.Y. 2009) ................................................... 22

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp*., 654 F.3d 242 (2d Cir. 2011) .................................................................................................................................... 22

*Maldonado v. BTB Events & Celebrations, Inc.,* 990 F. Supp. 2d 382 (S.D.N.Y. 2013)............... 9

*Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997) ............................................................ 15, 18

*Martinez v. Ayken, Inc.*, No. 13 Civ. 7411, 2016 U.S. Dist. LEXIS 25556 (E.D.N.Y. Feb. 29, 2016) ..................................................................................................... 19, 22, 24, 25

*Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316, 2012 U.S. Dist. LEXIS 108605 (S.D.N.Y. Aug. 1, 2012) .......................................................................................................................... 8

*Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 U.S. Dist. LEXIS 61557 (S.D.N.Y. Aug. 12, 2008) .................................................................................................. 23

*Mentor v. Imperial Parking Sys*., 246 F.R.D. 178 (S.D.N.Y. 2007)............................................ 23

*Moore v. Painewebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ........................................................ 23

*Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................... 23

*Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 U.S. Dist. LEXIS 64534 (E.D.N.Y. 2013) ................................................................................................................................... 15

*Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897, 2007 U.S. Dist. LEXIS 98840 (E.D.N.Y. Mar. 30, 2007) ............................................................................................................................. 15

*Noble v. 93 University Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)....................................... 23

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009)....................................................... 13

*Perez v. Allstate Ins. Co*., No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sep. 16, 2014) ................................................................................................................................... 25

*Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012)...................................................................................................... 23

*Reyes v. Sofia Fabulous Pizza Corp*., No. 13 Civ. 7549, 2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014).................................................................................................... 6, 7

*Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 Civ. 5255, 2013 U.S. Dist. LEXIS 77183 (E.D.N.Y. May 31, 2013) ............................................................... 23

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................... 23

*Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008) ...................................................... 9

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013)............................................................................................. 16

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ........................................... 9

*Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54 (E.D.N.Y. 2014) ....... 15

*Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. 2007) ......................................................................................... 23, 24

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013) .......................... 25

*Velez v. 111 Atlas Rest. Corp.*, No. 14 Civ. 6956, 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016) .................................................................................................... 25

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2005 U.S. Dist. LEXIS 709 (S.D.N.Y. Jan. 18, 2005) ......................................................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................... 17, 18

*Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124 (2d Cir. 2001) ................................................................................... 22

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ............................ 24

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ......................................... 2

**STATUTES**

N.Y. Lab. L. § 195 ................................................................................... 2, 12, 13, 16

N.Y. Lab. L. § 652.......................................................................................... 3

**RULES**

Fed. R. Civ. P. 23 ............................................................................... passim

**REGULATIONS**

12 N.Y.C.R.R. § 146-1.2 ................................................................................. 3

12 N.Y.C.R.R. § 146-1.3 .......................................................................... 6, 7, 8

12 N.Y.C.R.R. § 146-1.4 ........................................................................ 4, 5, 8

12 N.Y.C.R.R. § 146-1.6 ................................................................................ 11

12 N.Y.C.R.R. § 146-2.18 ............................................................................... 9

12 N.Y.C.R.R. § 146-2.19 ............................................................................... 9

12 N.Y.C.R.R. § 146-2.2 ...................................................................... 6, 7, 8, 12

12 N.Y.C.R.R. § 146-2.3 ............................................................................... 13

12 N.YC.R.R. § 146-2.9 ......................................................................................................... 10, 11

Plaintiffs BAIRON ORELLANA, JUAN CARLOS ORTIZ, and KIRK ADAIR (hereinafter, "Plaintiffs"), submit this memorandum of law in support of their motion for certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure as to their claims under New York Labor Law. On August 28, 2018, Plaintiffs filed a Class and Collective Action Complaint against ONE IF BY LAND RESTAURANT LLC (hereinafter, "Corporate Defendant") and DAVID GHATANFARD (hereinafter, "Individual Defendant," and together with Corporate Defendant, "Defendants"), seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs brought the NYLL claims on behalf of themselves and all former and current non-exempt tipped employees, including servers, bussers, food runners, sommeliers, bartenders, among others, employed by Defendants at "One If By Land, Two If By Sea" located at 17 Barrow Street, New York, New York 10014, from January 1, 2015 to the present ("Class Members" or the "Class").

## I.      PLAINTIFFS' NEW YORK LABOR LAW CLAIMS

Plaintiff BAIRON ORELLANA was employed by Defendants to work as a food runner at One If By Land, Two If By Sea from on or about May 31, 2016 until on or about September 25, 2017. *See* Declaration of Bairon Orellana ("Orellana Decl.") ¶ 1. Plaintiff JUAN CARLOS ORTIZ was employed by Defendants to work as a food runner at One If By Land, Two If By Sea from in or about June 2016 until on or about June 1, 2017. *See* Declaration of Juan Carlos Ortiz ("Ortiz Decl.") ¶ 1. Plaintiff KIRK ADAIR was employed by Defendants to work as a sommelier at One If By Land, Two If By Sea from in or around 1993 until on or about June 10, 2016. *See* Declaration of Kirk Adair ("Adair Decl.") ¶ 1. During their employment with Defendants, Plaintiffs suffered significant wage and hour violations. In addition, they regularly observed and spoke to other non-exempt employees at One If By Land, Two If By Sea suffering from the same policies. (Orellana Decl. ¶ 2; Ortiz Decl. ¶ 3; Adair Decl. ¶ 3). Specifically, Plaintiffs and Class

Members were subject to Defendants' common practices that (i) failed to pay proper minimum wage, (ii) failed to pay proper overtime compensation, (iii) failed to pay spread of hours premium; (iv) failed to pay proper wages due to time-shaving, (v) failed to provide proper wage and hour notices, and (vi) failed to provide proper wage statements, in violation of the NYLL.[1]

"In determining whether the plaintiffs received the minimum wage and overtime, we start with the premise that the employer is obligated to maintain records of wages and hours." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). "In the absence of documentation, the employee may rely on [their] own recollection to meet [their] initial burden, in which case the employer must proffer evidence sufficient to rebut that recollection." *Id.* In this case, Defendants failed to keep accurate wage and hour records in violation of the employer's recordkeeping obligations under the NYLL. N.Y. LAB. L. § 195. Defendants failed to provide time and payroll records prior to 2016 and after 2017. In the absence of Defendants' records, the Court must rely on Plaintiffs' recollection and supporting evidence with respect to their hours worked and wages paid. *Id.*

### A. Failure to Pay Proper Minimum Wage and Overtime Due to Invalid Tip Credit

#### a. *Defendants Paid Non-Exempt Tipped Employees at Hourly Rates Less Than the Prevailing Minimum Wage*

Plaintiffs and Class Members suffered from Defendants' policy of failing to pay the proper minimum wage due to an invalid tip credit allowance. During their employment with Defendants, Plaintiffs and Class Members were paid at hourly rates that were at all times below the prevailing minimum wage. (Orellana Decl. ¶ 6; Ortiz Decl. ¶ 7; Adair Decl. ¶ 8); *see also* **Exhibit A** (Sample Payroll Records demonstrating that Class Members were all paid below the prevailing minimum wage rate). Specifically, from in or 2012 until on or about December 31, 2015, Plaintiff ADAIR

---

[1] Plaintiff ADAIR has additionally alleged an individual claim for unreimbursed uniform costs.

was paid at an hourly rate of $5.00 for all hours worked up to forty (40) hours per week. (Adair Decl. ¶ 8). However, the state minimum wage rates were $7.25 in 2012 and 2013, $8.00 in 2014, and $8.75 in 2015. *See* 12 N.Y.C.R.R. § 146-1.2. In 2016 and 2017, Plaintiffs were paid at an hourly rate of $7.50, which was less than the state minimum wage rate of $9.00 and $11.00, respectively. (Orellana Decl. ¶ 6; Ortiz Decl. ¶ 7; Adair Decl. ¶ 8; *see also* 12 N.Y.C.R.R. § 146-1.2). Based on Plaintiffs' personal observations and conversations with co-workers, other tipped employees at One If By Land, Two If By Sea were similarly compensated at hourly rates that were at all times below the minimum wage. *Id*.; *see also* **Exhibit A**.

Defendants' class payroll records demonstrate that tipped employees were paid $7.50 for all hours up to forty in a workweek and $12.00 for all overtime hours in excess of forty in a workweek in 2016. **Exhibit A**; N.Y. LAB. L. § 652; 12 N.Y.C.R.R. § 146-1.2. Defendants' payroll records further demonstrate that tipped employees were paid $7.50 for all hours up to forty in a workweek and $12.35 for all overtime hours in excess of forty in a workweek in 2017. **Exhibits A-B**. In 2019, Defendants testified that they continue to pay their employees at the prevailing tip credit minimum wage rate, paying their employees at hourly rates of $10.00, which is less than the state minimum wage rate of $15.00. (Deposition Transcript of Lisa Gardner ("Gardner Dep.") 12:20-25, attached as **Exhibit C**). Lisa Gardner, who administers the payroll for the restaurant in addition to being Defendants' Special Events Coordinator, confirmed that all tipped employees are paid at the same prevailing hourly rates for tipped employees. (Gardner Dep. 13-14)[2].

   b.  *Defendants Paid Non-Exempt Tipped Employees at Improper Overtime Rates, Claiming an Excessive Tip Credit*

Plaintiffs and Class Members suffered from Defendants' policy of failing to pay the proper overtime compensation. Under the NYLL, an employer is required to pay an employee for

---

[2] Ms. Gardner testified that at one point in time, servers were paid legally more than runners and bussers, but that was prior to the Covered Period here.

overtime for hours worked in excess of 40 hours per week at a rate of one and one-half times the employee's regular rate. *See* 12 N.Y.C.R.R. § 146-1.4; *Gonzalez v. Jane Roe Inc.*, No. 10 Civ. 1000, 2015 U.S. Dist. LEXIS 103370, at \*9 (E.D.N.Y. July 15, 2015). At all relevant times, when Plaintiffs and Class Members worked in excess of 40 hours per week, Defendants compensated Plaintiffs and Class Members at overtime rates less than one-and-a-half times that of the prevailing minimum wage rate due to an invalid tip credit deduction. (Orellana Decl. ¶ 6; Ortiz Decl. ¶ 7; Adair Decl. ¶ 8). At minimum, based on the prevailing minimum wage rates in New York, the lowest overtime rate should be $13.13 in 2015, $13.50 in 2016, and $16.50 in 2017. *See* 12 N.Y.C.R.R. § 146-1.4 (for 2015, $8.75 x 1.5 = $13.13; for 2016, $9.00 x 1.5 = $13.50; for 2017, $11.00 x 1.5 = $16.50). However, Defendants' Payroll Records demonstrate that they compensated overtime rates at varying rates of either $7.50 or $9.38 in 2015, overtime rates at $12.00 in 2016, and overtime rates at $12.35 in 2017. *See* **Exhibits D** (Adair's Payroll Records) and **B** (Orellana's Wage Statement). These rates were clearly below that of one and one-half times the regular rate due to an invalid tip credit deduction, but these rates were sometimes below even that of a valid tip credit overtime rate. *See* 12 N.Y.C.R.R. § 146-1.4. To correctly calculate the tip credit overtime in 2015, $8.75 x 1.5 = $13.13 – $3.75 (tip credit), results in a tip credit overtime rate of $9.38. *Id*. To correctly calculate the tip credit overtime in 2017, $11.00 x 1.5 = $16.50 – $3.50 (tip credit), results in a tip credit overtime rate of $13.00. *Id*. For the reasons described below, Defendants were not entitled to claim a valid tip credit for Plaintiffs' and Class Members' overtime hours worked, including due to the fact that Defendants claimed a tip credit in excess of the statutory amount permissible when they paid Plaintiffs and Class Members at overtime rates below even that of the tip credit overtime rate. *Id*.

Plaintiff ADAIR's payroll records demonstrate that he was paid at overtime rates even less than that of the tip credit overtime rate in 2015, which was $9.38. *See* **Exhibit D**. His records

demonstrate that on occasion, instead of a $9.38 overtime rate, he was compensated at a rate of $7.50 for his overtime hours worked. *Id.*; *see also* 12 N.Y.C.R.R. § 146-1.4. $7.50 is an incorrect tip credit overtime rate because Defendants deducted the tip credit before calculating the one-and-a-half premium. *Id.* (Correct: $8.75 x 1.5 = $13.13, then subtract $3.75 (tip credit) = $9.38; Incorrect: $8.75 – $3.75 (tip credit) = $5.00, the multiple 1.5 = $7.50). A correct tip credit overtime must calculate the overtime premium before deducting the tip credit. *Id.* Therefore, compensating Plaintiff ADAIR and Class Members at overtime rates less than the tip credit overtime rate invalidates the tip credit due to an excess tip credit deduction. (**Exhibit C**, Gardner Dep. 12:20-25) (testifying that Plaintiffs and Class Members were similarly paid).

Plaintiff ORELLANA's wage statements similarly demonstrate that he was paid at overtime rates less than that of the tip credit overtime rate in 2017. *See* **Exhibit B**. Assuming *arguendo* that Defendants claimed a valid tip credit, Plaintiff ORELLANA and Class Members should have been paid at least $13.00 per overtime hour. 12 N.Y.C.R.R. § 146-1.4. However, Defendants uniformly compensated them at the incorrect tip credit overtime rate, which invalidates the tip credit due to an excess tip credit deduction as Defendants would be claiming a tip credit of $4.15 per overtime hour, as opposed to $3.50 per overtime hour, which is the statutory amount permissible. *Id.* (Correct: $11.00 x 1.5 = $16.50, then subtract $3.50 (tip credit) = $13.00).

Throughout the relevant period, Defendants compensated Plaintiffs and Class Members at the incorrect tip credit overtime rate, claiming a tip credit more than statutorily permissible, because Defendants are unaware of the proper method to calculate the tip credit overtime rate. *Supra* at *4-5. Even after this litigation was initiated, Defendants failed to make efforts to comply with wage and hour regulations. Although Ms. Gardner administers payroll for One If By Land, Two If By Sea, and is responsible for answering employee questions regarding compensation, Ms. Gardner is unable to correctly calculate the tip credit overtime rate. (**Exhibit C,** Gardner Dep.

32:17-33:11)("Q. Do you know how to calculate the overtime rate for a tipped employee? A. Yes. Q. So if a tipped employee is getting paid $10 right now per hour, then their overtime rate would be $15; is that right? A. Correct. . . . Q. So if an employee now came to you and asked what my overtime rate would be, what you just told me would be what you would inform the employee, right? A. Yes." However, the correct tip credit overtime rate in 2019 is $17.50).

>    c. *Defendants Failed to Satisfy the Requirements for Claiming Tip Credit Allowance under the NYLL*

Defendants were not entitled to claim a tip credit allowance because they failed to satisfy the tip credit notice requirements. Under the NYLL, "[a]n employer may take a credit towards the basic minimum hourly rate" only if certain preconditions are met. *See* 12 N.Y.C.R.R. § 146-1.3 (effective January 1, 2011). *See Gonzalez*, 2015 U.S. Dist. LEXIS 103370, at *6 n.6 (holding that "employer may receive the benefit of the tip credit under the NYLL only if the employer gives proper notice"); *Cuzco v. F&J Steaks 37th St. LLC*, No. 13 Civ. 1859, 2014 U.S. Dist. LEXIS 72984, at *7 (S.D.N.Y. May 28, 2014).

First, the employer must provide tipped employees with written notice "prior to the start of employment" detailing "the employee's regular hourly pay rate, overtime hourly pay rate, [and] the amount of tip credit, if any, to be taken from the basic minimum hourly rate" and informing the employee that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2. "Failure to provide adequate tip credit notice under § 146-2.2 invalidates any tip credit claimed by the employer." *Reyes v. Sofia Fabulous Pizza Corp.*, 2014 U.S. Dist. LEXIS 188734, at *23 (S.D.N.Y. Apr. 7, 2014). Here, Defendants failed to provide proper written tip credit notice to Plaintiff and Class Members prior to the start of their employment, and with each change in pay rate, as required under Section 146-2.2.

Although Plaintiff ADAIR worked for Defendants since 1993, Defendants only produced ADAIR's tip credit notice, dated as of February 15, 2015. *See* **Exhibit E**. Such notice was defective

as it misstated that the tip credit was $2.50 when Defendants actually claimed a tip credit deduction of at least $3.75. *See* **Exhibit C**. Plaintiff ADAIR's notice was also defective as Defendants handwrote that Plaintiff ADAIR's overtime rate of pay was $9.38, while simultaneously informing him, albeit incorrectly, that his overtime pay rate, including tips, should bring him up to an overtime rate of $9.63 per hour for overs over 40. *See* **Exhibit E**. Defendants failed to correctly inform Plaintiff ADAIR that if he did not receive enough tips over the course of the week to bring his overtime rate up to $13.13 per overtime hour, that he would be paid additional wages to make up the difference. *Id*.; *see also* 12 N.Y.C.R.R. § 146-2.2. "Failure to provide adequate tip credit notice under [Section] 146-2.2 invalidates any tip credit claimed by the employer." *Reyes*, 2014 U.S. Dist. LEXIS 188734 at *23 (citing 12 N.Y.C.R.R. § 146-1.3); *Gonzalez*, 2015 U.S. Dist. LEXIS 103370, at *6 n.6 (holding that "employer may receive the benefit of the tip credit under the NYLL only if the employer gives proper notice").

With respect to Plaintiffs ORELLANA and ORTIZ, the notices were defective as they failed to properly inform Plaintiffs of their correct regular rates, overtime rates, and tip credit amounts. *See* 12 N.Y.C.R.R. § 146-2.2; **Exhibits F** and **G**. A correct notice in 2016 would inform them of a regular rate of pay of $9.00 per hour for the first forty hours in a week and an overtime rate of pay of $13.50 per hour for hours over forty. *Id*. A correct notice would also mark off that they were tipped employees, and then inform them that a tip credit of $1.50 per hour would be taken, resulting in a tipped minimum wage rate of $7.50, and a tipped overtime rate of $12.00. *Id*. Lastly, the notice should inform them that if they do not receive enough tips over the course of a week to bring them up to the minimum hourly rates of $9.00 per hour for the first 40 hours and $13.50 per hour for hours over 40, they should be paid additional wages that week to make up the difference. *Id*. Plaintiffs' notices clearly do not contain the proper rates for 2016. Plaintiff ORTIZ was also plainly informed of the incorrect overtime rate of pay of $11.25 per hour for hours over

40. *See* **Exhibit G**; *see also* 12 N.Y.C.R.R. § 146-1.4 ("When an employer is taking a credit toward the basic minimum hourly rate pursuant to section 146-1.3 of this Subpart, the overtime rate shall be the employee's regular rate of pay before subtracting any tip credit, multiplied by [1.5], minus the tip credit")(Correct: $11.00 x 1.5 = $16.50, then subtract $3.50 (tip credit) = $13.00; Incorrect: $11.00 – $3.50 (tip credit) = $7.50, then multiply by 1.5 = $11.25).

Even though Plaintiffs worked a span of more than one year, and was subject to changes in their hourly rates of pay, they were never provided additional notices to cure Defendants' defective, invalid tip credit and wage notice. *See* 12 N.Y.C.R.R. § 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips **and** if the employee has been notified of the tip credit as required in section 146-2.2 of this Part."); *see also* 12 N.Y.C.R.R. § 146-2.2. Following discovery, Defendants have only provided Plaintiff ADAIR's 2015 tip credit notice and Plaintiffs ORELLANA's and ORTIZ's 2016 tip credit notices. *See* **Exhibits E-G**. Ms. Gardner testified that the same notice provided to Plaintiffs were provided to Class Members. (**Exhibit C**, Gardner Dep. 27:4-29:5 ("Q. But this is the only pay notice form that you give to your staff, right? A. Correct.")). Therefore, Defendants failed to satisfy the requirements for claiming a tip credit under the NYLL. Defendants have not provided any proper tip credit notice for either Plaintiffs or Class Members to demonstrate that they have met the requirements to claim a tip credit against their hourly rates.

An employer may not take a tip credit unless it complies strictly with all statutory requirements. *See Mendez v. Pizza on Stone, LLC*, 2012 U.S. Dist. LEXIS 108605, at *11 (S.D.N.Y. Aug. 1, 2012) (noting the "strict prerequisites" to taking tip credits under the NYLL). Based on Defendants' own documents and deposition testimony, Defendants were not entitled to deduct a tip credit allowance with respect to Plaintiffs and Class Members. Therefore, Plaintiffs and Class Members are entitled to unpaid minimum wage and overtime due to an invalid tip credit deduction.

      *d.  Defendants' Illegal Tip Retention Under World Yacht Invalidates the Tip Credit*

In *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), the NYLL forbids employers from retaining any service charge "purported to be a gratuity for an employee." *See Maldonado v. BTB Events & Celebrations, Inc.,* 990 F. Supp. 2d 382, 389-90 (S.D.N.Y. 2013). "Under the *World Yacht* standard, whether a charge purports to be a gratuity is measured by whether a reasonable patron would understand that a service charge was being collected in lieu of a gratuity." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 330 (S.D.N.Y. 2010). There is "a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity." 12 N.Y.C.R.R. § 146-2.18(b). Ms. Gardner testified that there is an "admin fee assessed" of "$450" for all special events, but testified that "[she does not] tell the customers that the admin fee goes to [her]" and would not be remitted to tipped employees. (**Exhibit C**, Gardner Dep. 15:2-17:12 and 21:18-22). Therefore, Defendants illegally retained gratuities, and failed to remit the "admin fee" to Plaintiffs and Class Members. Service charges, including Defendants' "admin fee," held out to customers without the language that the fee was not a gratuity, "and will not be distributed to the employees who provided service to the guests," violates the *World Yacht* rule. *See* 12 N.Y.C.R.R. § 146-2.19(c); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 461 (S.D.N.Y. 2014); *Diaz v. Amedeo Hotels Ltd. P'ship*, No. 12 Civ. 4418, 2016 U.S. Dist. LEXIS 41453, at *28 (E.D.N.Y. Mar. 29, 2016). Therefore, Plaintiffs and Class Members are entitled to unpaid wages due to an invalid tip credit deduction and illegally retained gratuities from the purported "admin fee."

      *e.  Defendants Required Plaintiffs and Class Members to Perform Non-Tip Duties*
          *for More Than 20% of Their Workday, Invalidating the Tip Credit*

Under the NYLL, "if a tipped employee performs non-tipped work for (a) two hours or more, or (b) for more than 20 percent of his or her shift, whichever is less, the wages of the

employee shall be subject to no tip credit for that day." 12 N.YC.R.R. § 146-2.9. Here, Plaintiffs and Class Members were required to perform a substantial amount of non-tipped side work each workday. (Orellana ¶¶ 3 and 8; Ortiz ¶¶ 4 and 9; Adair ¶¶ 4, 6 and 10). Employees were required to wash dishes, polish silverware and glassware, stock new shipments of supplies in the basement, transfer ingredients and supplies between One If By Land, Two If By Sea and Individual Defendant David Ghatanfard's Valbella restaurants, among others. *Id.* Plaintiffs and Class Members were also required to spend extensive non-service time before and after events, such as weddings, to set up the event, to rearrange the furniture, reset the restaurant, and to clean up the restaurant. *Id.*

Not even considering non-tipped duties that Plaintiffs and Class Members were required to perform while on the service floor and in between serving customers, Plaintiffs and Class Members were required to perform extensive non-tipped work before the start of and after the end of the service shift. Defendants' website indicated that One If By Land's operating hours are from 5:30pm to 9:30pm (last seating) from Sunday to Thursday, and from 5:15pm to 10:30pm (last seating). *See* **Exhibit H** (Defendants' Webpage Listing Operational Hours). However, Plaintiffs and Class Members are required to clock-in and start their shift as early as 3:00pm, if not earlier, to perform approximately one to two hours of side work prior to the start of dinner service, and they are required to stay well past the time for last seating, to perform over one hour of side work after the end of dinner service. *See* **Exhibit A** (Sample Class Payroll Records). During the time before service began at either 5:15pm or 5:30pm, and the time after service ended at either 10:30pm or 11:30pm, Plaintiffs and Class Members were required to perform non-tipped side work, but were nonetheless deducted a tip credit for all recorded hours worked. (Orellana ¶¶ 3 and 8; Ortiz ¶¶ 4 and 9; Adair ¶¶ 4 and 10). Such hours spent on specific non-tipped side work alone results in Plaintiffs and Class Members performing non-tipped duties for either more than 2 hours

per workday or more than 20% of their workday, which invalidates Defendants' tip credit for the workday. *Id*; *see also* 12 N.YC.R.R. § 146-2.9.

**B.    Failure to Pay Spread of Hours Premium**

Under the NYLL, Defendants are required to pay a spread of hours premium to Plaintiffs and Class Members for workdays that exceed a spread of ten hours in a given workday. 12 N.Y.C.R.R. § 146-1.6 ("each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."). Defendants' time records demonstrate that Plaintiffs and Class Members worked workdays in excess of ten hours, but Defendants' payroll records do not provide for any payment of a spread of hours premium. In fact, Ms. Gardner's deposition affirms that Defendants had no knowledge of the spread of hours premium requirement. (Gardner Dep. 11:23-5 "Q. Do you know what a spread of hours premium is? A: No."). Based on the foregoing, Defendants failed to pay spread of hours premium when owed, and Plaintiffs and Class Members are entitled to damages under the NYLL.

**C.    Failure to Pay Wages Due to Time-Shaving**

Defendant failed to pay wages for all hours worked to Plaintiffs and Class Members. (Orellana Decl. ¶ 5; Ortiz Decl. ¶ 6; Adair Decl. ¶ 4 and 7). According to Plaintiffs ORELLANA and ORTIZ, approximately once a week, the floor manager, Maria Margilaj would wait until they were clocked out before asking them to continue with side-work for one to three hours, after clocking out. *Id*. Other tipped employees were required to join Plaintiffs in completing off-the-clock side-work, including Prody "Last Name Unknown" and Oscar "Last Name Unknown." (Ortiz Decl. ¶ 4 and 6; Orellana Decl. ¶ 5). In addition to this off-the-clock work, Plaintiffs were not paid for all of their hours worked and had their work hours adjusted when they worked double shifts for events. *Id*. Events, lasting at least 8 hours each, took place four to five times per month, but such hours worked were not recorded on Plaintiffs' and Class Members' time cards. These

hours worked were unpaid. (Orellana Decl. ¶ 5; Ortiz Decl. ¶ 6; Adair Decl. ¶ 6). Plaintiff ADAIR was also regularly required to work at minimum, 79 hours per week, however, his recorded hours failed to reflect his actual hours worked. **Exhibit D**; *see also* Adair Decl. ¶¶ 4-7. Other co-workers, including putative class members, also complained throughout their employment that they were not paid for all of their hours worked. *Id*. Specifically, they would complain that they were shorted three to five hours of work or that they were not paid for a specific day of work. (Adair Decl. ¶ 4).

As a result, Defendants had a uniform practice of requiring employees, including Plaintiffs and Class Members, to work off the clock and they manually adjusted Plaintiffs' and Class Members' hours worked to reflect fewer hours than those actually worked.  (Orellana Decl. ¶ 5; Ortiz Decl. ¶ 6; Adair Decl. ¶ 4 and 7). Based on the foregoing, Defendant failed to pay Plaintiffs and Class Members the proper overtime compensation under the NYLL.

**D.    Failure to Provide Proper Wage and Hour Notices**

Under the Wage Theft Prevention Act ("WTPA"), every employer is required to provide employees a written notice at the time of hiring and prior to any changes in the information on the notice. *See* N.Y. LAB. L. §§ 195-1,2; 12 N.Y.C.R.R. § 146-2.2. The notice must contain, among others, the regular hourly pay rate; overtime hourly pay rate; the amount of tip credit claimed as part of the minimum wage; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business; the mailing address if different; and the telephone number of the employer. *Id.* The notice must be provided in writing in English and in the primary language of the employee. *Id*. The employer must also obtain from the employee a signed and dated written acknowledgement of receipt of such notice, which the employer must keep for six years. *Id*. The "employer has the burden of proving compliance" with this requirement. *Id.* (emphasis added).

Here, Plaintiffs and Class Members did not receive any form of wage and hour notice from Defendants throughout their employment other than the tip credit notices at hiring. (Gardner Dep. 27:4-29:4). However, such notices were defective for the reasons described above as they failed to properly inform Plaintiffs of their proper regular rates, overtime rates, and tip credit amount. *Supra* at *6-9; *see* **Exhibits E-G**. The notices were also defective and failed to suffice as proper wage and hour notice because the tip credit allowance was not checked off and failed to provide information including the physical address of the employer's main office or principal place of business, the mailing address, and the telephone number of the employer. *Id*. The notices were also not provided in languages other than English when Plaintiffs' and Class Members' primary language was not English. *Id*. Based on the above, Defendants violated the wage and hour notice requirement, and Plaintiffs and Class Members are owed statutory penalties under the NYLL.

**E.    Failure to Provide Proper Wage Statements**

Under the WTPA, employers must furnish each employee with wage statements, commonly known as paystubs, listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; regular hourly pay rate; overtime hourly pay rate; hours worked; gross wages; amount of tip credit claimed as part of the minimum wage; and net wages. *See* N.Y. Lab. L. § 195-3; 12 N.Y.C.R.R. § 146-2.3.

Plaintiffs and Class Members did not receive proper wage statements from Defendants. (Orellana Decl. ¶ 11; Ortiz Decl. ¶ 14; Adair Decl. ¶ 13); **Exhibit B**. Employers must "provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages," listing tip credit claimed as part of the minimum wage. 12 N.Y.C.R.R. § 146-2.3. *See Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 309 (E.D.N.Y. 2009); *Cao v. Wu Liang Ye Lexington Rest., Inc.*, 2010 U.S. Dist. LEXIS 109373, at *6 (S.D.N.Y. Sep. 30, 2010). The wage statements provided to employees by Defendants were defective because they failed to (i) state the amount of tip credit

13

allowance claimed for the period, (ii) state the proper regular and overtime rates, and (iii) accurately reflect their proper compensation as Defendants failed to pay spread of hours premiums and for all hours worked due to time-shaving. **Exhibit B**. Thus, Defendants violated the wage statement requirement, and Plaintiffs and Class Members are owed penalties under the NYLL.

## II.     PLAINTIFFS SATISFY ALL REQUIREMENTS OF RULE 23

Rule 23 provides that a court should certify a class where, as here, plaintiffs satisfy each of the four conditions of Rule 23(a) as well as one of the three requirements of Rule 23(b). *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In Re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ("A district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met.").

Specifically, under Rule 23(a), plaintiffs must demonstrate that:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These requirements are generally referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, Rule 23(a) implicitly requires that class members be "identifiable and ascertainable." *Jankowski v. Castaldi,* 2006 U.S. Dist. LEXIS 4237, at *14 (E.D.N.Y. Jan. 11, 2006). Under Rule 23(b)(3), plaintiffs must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

When considering whether the requirements of Rule 23 have been met, "a court may not address the merits of the action except to the extent that a merits issue overlaps with a Rule 23

requirement." *In re Fosamax Prod. Liability Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008). *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Ultimately, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Kowalski v. YellowPages.com, LLC*, 2012 U.S. Dist. LEXIS 46539, at *37 (S.D.N.Y. Mar. 31, 2012).

The requirements of Rule 23 tend to overlap or merge with each other, so courts are to "adopt a standard of flexibility," *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997), and "are encouraged to construe the requirements of Rule 23 liberally in order to effectuate its overall purpose." *Niemiec v. Ann Bendick Realty*, 2007 U.S. Dist. LEXIS 98840, at *16 (E.D.N.Y. Mar. 30, 2007). "These purposes include the protection of small claims through aggregation and promoting judicial economy." *Id.*; *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968) ("[T]he class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation."). In addition, "it is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* (citation omitted).

Accordingly, courts generally "take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class." *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014) (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012). Indeed, "[c]ourts in this Circuit have displayed a preference for granting rather than denying class certification." *Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 U.S. Dist. LEXIS 64534, at *15 (E.D.N.Y. 2013).

The facts provided in this memorandum, based on Defendants' deposition testimony and document productions, in addition to Plaintiffs' supporting declaration, demonstrate a systematic pattern of non-compliance with the NYLL applicable to Class Members.

**A.    The Proposed Class Is Identifiable and Ascertainable**

A class is identifiable and ascertainable where "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 U.S. Dist. LEXIS 36357, at *95 (S.D.N.Y. Mar. 15, 2013). The standard "is not demanding" and the Court "need only be able to ascertain the general boundaries of the proposed class." *Gortat v. Capala Bros., Inc*., No. 07 Civ. 3629, 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010). Here, Plaintiffs unambiguously defines "Class Members" as "all former and current non-exempt tipped employees, including servers, bussers, food runners, sommeliers, bartenders, among others, employed by Defendants at "One If By Land, Two If By Sea" located at 17 Barrow Street, New York, New York 10014 on or after January 1, 2015. *See supra* 1.

Class Members can easily be identified based on Defendants' employment records. *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 n.85 (S.D.N.Y. 2011) ("The class . . . is easily identified from [defendant's] payroll records. Thus, the implied requirement of ascertainability is satisfied."); *Guan Ming Lin v. Benihana N.Y. Corp*., No. 10 Civ. 1335, 2012 U.S. Dist. LEXIS 186526, at *36 (S.D.N.Y. Oct. 23, 2012) (holding that class members are objectively identifiable in light of factors such as the name of employer, employment period, and whether employee is paid minimum wage, based on defendants' payroll records and wage statements); *Spencer*, 2013 U.S. Dist. LEXIS 36357, at *95-96 (holding that the class is easy to ascertain from defendant's own employment records). Under the NYLL, all employers are required to maintain and preserve payroll records for each employee for at least six years. *See* N.Y. LAB. L. § 195; 12 N.Y.C.R.R. §

146-2.1. Therefore, tipped employees are identifiable from Defendants' payroll records. *See* **Exhibit A**. As such, the proposed class is identifiable and ascertainable.

**B.    The Class Is So Numerous that Joinder Is Impracticable**

Although there is no rigid numerical threshold for measuring the impracticability of joinder, the Second Circuit has stated that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007). *See Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) ("courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer"). "[P]laintiff need not present a precise calculation of the number of class members" or and the Court may "rely on reasonable inferences drawn from available facts," provided that Plaintiff presents "some evidence of or reasonably estimate the number of class members." *Flores*, 284 F.R.D. at 123.

Based on Defendants' Payroll Records for the calendar years 2016 and 2017, there are at least 53 non-exempt tipped employees employed by One If By Land, Two If By Sea after January 1, 2015. Therefore, the size of the putative Rule 23 class, which consists of tipped employees at One If By Land, Two If By Sea, is most certainly over 40, satisfying the numerosity requirement. *See* **Exhibit I**; Declaration of C.K. Lee, filed in support of the herein motion, ¶ 19.

**C.    Commonality and Typicality Requirements Are Met**

The commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n. 5 (2011). "As a result, the commonality and typicality

requirements tend to merge into one another, and similar considerations animate the analysis" of the two requirements. *Marisol A.*, 126 F.3d at 376.

Commonality is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It requires that the claims of the proposed class "depend upon a common contention" "that is capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551. It "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011) (citing *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008)). *See Velez v. Majik Cleaning Serv.*, 2005 U.S. Dist. LEXIS 709, at *9 (S.D.N.Y. Jan. 18, 2005) ("The commonality requirement may be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct."). "[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Garcia*, 281 F.R.D. at 105 (emphasis added). *See Dukes*, 131 S. Ct. at 2556 ("Even a single [common] question will do.").

Typicality requires that the claims of Plaintiffs are typical of the claims of the Class. *See* Fed. R. Civ. P. 23(a)(3). It is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376. "As with commonality, typicality need not be complete." *Damassia*, 250 F.R.D. at 157. Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). *See Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86-87 (S.D.N.Y. 2001) (If "the same

unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Plaintiffs demonstrate commonality and typicality through (1) declarations from Plaintiffs affirming their experience, observations and conversations of Defendants' failure to comply with the NYLL with respect to other tipped employees at One If By Land, Two If By Sea; (2) Defendants' Payroll Records that reflect alleged companywide violations; and (3) Defendants' deposition testimonies regarding uniform wage and hour policies and practices. *See Martinez v. Ayken, Inc.*, No. 13 Civ. 7411, 2016 U.S. Dist. LEXIS 25556, at *28 (E.D.N.Y. Feb. 29, 2016) ("When viewed as a whole, the deposition testimony, declarations and time/payroll records are sufficient proof to meet both the commonality and typicality requirements as they adequately establish that, at minimum, there is at least 'one issue common to all class members' that provides the 'unifying thread' which serves to bind the claims of the class members together."). Ms. Gardner specifically testified that Plaintiffs and Class Members were paid the same rates, were given the same wage notices and were subject to the same policies. (**Exhibit B**, Gardner Dep. 13:2-23).

*(a) Unpaid Minimum Wage and Overtime Due to Invalid Tip Credit.* Defendants failed to pay Plaintiffs and Class Members the proper minimum wage and overtime. *See supra* 2-6. Defendants' payroll records and deposition testimonies invariably show that Defendants paid all tipped employees at similar tip credit rates that were below the prevailing minimum wage at all times. *See supra* 3-4; Gardner Dep. 13:17-14:19. Defendants were not entitled to claim tip credit because they failed to satisfy the requirements under the NYLL. *See supra* 6-8. Throughout the entire six year period, Defendants (i) provided improper tip credit notices that failed to state the amount of tip credit allowance claimed as part of the minimum wage and stated incorrect regular rates, overtime rates, and tip credit amounts, (ii) failed to provide written tip credit notices to

19

employees with each change in pay rate (iii) claimed a tip credit in excess of the statutory amount permissible (iv) retained gratuities in violation of *World Yacht*, and (v) required tipped employees to perform non-tip producing side work in excess of either two hours or 20% of their workday, whichever is less. *See supra* 6-11. Therefore, the minimum wage and overtime claims of Plaintiffs and Class Members arise from the same course of unlawful conduct and can be resolved with generalized proof and answer.

(b) ***Unpaid Spread of Hours Premium.*** Plaintiffs and Class Members suffered from Defendants' companywide policy of failing to pay spread of hours premium. *See supra* 11. Plaintiffs' declarations and Defendants' payroll records consistently show that Plaintiffs and Class Members were not paid their spread of hours premium when they worked a spread of more than 10 hours in a given workday.  Ms. Gardner also affirmed that even though she was in charge of payroll administration, she was unaware of the NYLL's spread of hours requirement. (Gardner Dep. 11:23-25).

(c) ***Unpaid Wages Due to Time Shaving.*** Plaintiffs and Class Members suffered from time shaving as a result of Defendants' policy of (i) requiring employees to work off-the-clock after their shift and (ii) manually adjusting employees' actual hours worked. Plaintiffs' declarations provide that other employees, including putative class members, also complained of regular time-shaving wherein they were required to work off-the-clock and had their actual work hours reduced on record. *See supra* 11-12. Plaintiffs' declarations consistently show that Plaintiffs and other hourly employees at One If By Land, Two If By Sea were regularly not paid the proper regular and/or overtime compensation for all hours worked.

(d) ***Improper Wage and Hour Notices.*** Defendants failed to provide Plaintiffs and Class Members with proper wage and hour notices. *See supra* 12-13. Ms. Gardner admitted that the Notice of Pay Rates & Pay Day were the only wage/tip credit notices provided by Defendants.

(**Exhibit B**, Gardner Dep. 27:4-29:5). Such notices were defective as they failed to list (i) correct rates, (ii) Defendants' physical address for principal place of business, (iii) the mailing address, and (iv) Defendants' phone number. Such notices were not provided in the Plaintiffs' and Class Members' primary language for those whose primary language was not English. *See supra* 12-13. Based on Defendants' lack of subsequent notices and Plaintiffs' declarations, Defendants did not provide Plaintiffs and Class Members with their requisite wage and hour notice with every change in their pay rate, thereby failing to provide proper notice. *See supra* 12-13.

*(e) Improper Wage Statements*. Defendants failed to provide Plaintiffs and Class Members with proper wage statements by failing to provide wage statements with the amount of tip credit allowance claimed for the period, and the correct regular and overtime rates. *Id.* The wage statements also failed to include spread of hours and payment for all hours worked, which were not paid to Plaintiffs and Class Members. *Supra* 13-14; **Exhibit B**, Gardner Dep. 29:9-21.

In sum, because the above claims of Plaintiffs are common and typical to the claims of Class Members, and because these claims can be resolved with generalized answer and proof revolving around the legality of Defendants' companywide wage policies, the commonality and typicality requirements are met.

### D.   Plaintiffs Will Adequately Represent the Class

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement is satisfied where "(1) plaintiff's interests are [not] antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Satisfaction of the typicality requirement "is strong evidence that [the plaintiffs'] interests are not antagonistic to those of the class; the

same strategies that will vindicate [the plaintiffs'] claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158.

In order to defeat class certification, "the conflict [of interests] must be 'fundamental.'" *See Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124, 145 (2d Cir. 2001). While the courts have yet to explicitly define a "fundamental" conflict, it was held to exist when "the interests of the class representative can be pursued only at the expense of the interests of all the class members." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011). Further, it is worth noting that even "in the event a fundamental conflict does exist, it can be ameliorated by separating the class into 'homogeneous subclasses . . . with separate representation to eliminate conflicting interests.'" *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *31 (quoting *Literary Works*, 654 F.3d at 259).

Here, Plaintiffs have stated their willingness and ability to act as a class representative (Orellana Decl. ¶¶ 12-13; Ortiz Decl. ¶¶ 15-16; Adair Decl. ¶¶ 14-15). *See Flores*, 284 F.R.D. at 130 ("Courts in this [C]ircuit have found that plaintiffs' affidavits can properly satisfy evidence adequacy."); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396 (N.D.N.Y. 2011) ("The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims."); *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 352 (E.D.N.Y. 2009) (finding adequacy, relying in part on plaintiff's affidavit). Plaintiffs were subject to the same policy and practice as the Class, and have no interests that are antagonistic to those of the Class. *Id.* The same legal arguments and strategies will be used to vindicate their claims and those of the Class.

### E.    Common Questions of Law and Fact Predominate

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members, and . . . class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.

R. CIV. P. 23(b)(3). Plaintiffs have met the various criteria under Rule 23(a), and this is perhaps the best indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986)(satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 U.S. Dist. LEXIS 2914, at *22 (S.D.N.Y. 2007) ("The proposed class satisfies the requirements of Rule 23(b)(3) for many of the reasons discussed above [in discussion of Rule 23(a).").

Under Rule 23(b)(3), common questions of law or fact predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individual proof." *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 U.S. Dist. LEXIS 61557, at *24 (S.D.N.Y. Aug. 12, 2008). *See Rosario v. Valentine Ave. Disc. Store, Co*., No. 10 Civ. 5255, 2013 U.S. Dist. LEXIS 77183, at *31 (E.D.N.Y. May 31, 2013) (the predominance requirement is a "stricter version of the Rule 23(a) commonality requirement").

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer, alleging unlawful policies and practices. *See, e.g*., *Rosario*, 2013 U.S. Dist. LEXIS 77183, at *32[3].In fact, "numerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due." *Poplawski v. Metroplex on the Atl., LLC*, 2012 U.S. Dist. LEXIS 46408, at *27 (E.D.N.Y. Apr. 2, 2012).

---

[3] See also *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012); *Garcia*, 281 F.R.D. at 108; *Damassia*, 250 F.R.D. at 161; *Guzman v. VLM, Inc.*, 2008 U.S. Dist. LEXIS 15821, at *24 (E.D.N.Y. Mar. 2, 2008); *Mentor v. Imperial Parking Sys*., 246 F.R.D. 178, 184 (S.D.N.Y. 2007); *Iglesias-Mendoza*, 239 F.R.D. at 373; *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004).

Here, Plaintiffs have alleged that Defendants engaged in a common policy of (1) failing to pay proper minimum wage and overtime compensation; (2) failing to pay spread of hours premium; (3) failing to pay wages for all hours worked due to time shaving; (4) failing to provide proper wage and hour notices; and (5) failing to provide proper wage statements. "These types of claims are about the most perfect questions for class treatment." *Martinez*, 2016 U.S. Dist. LEXIS 25556, at \*39 (citing *Iglesias-Mendoza*, 239 F.R.D. at 373). To the extent that Plaintiffs and Class Members "have different damages, depending on the length of time they were employed, the wages they received, and the hours they worked, such questions do not defeat predominance." *Id. See Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04 Civ. 22, 2008 U.S. Dist. LEXIS 27598, at \*22 (E.D.N.Y. Mar. 31, 2008) ("factual variation among the circumstances of the class members is inevitable and does not defeat the predominance requirement.").

In sum, common questions regarding the legality of Defendants' compensation policies and practices predominate over any individual inquiries that may arise. Accordingly, Plaintiffs have satisfied the predominance requirement under Rule 23(b)(3).

## F.    Class Treatment Is Superior to Other Alternatives

"Courts in this Circuit . . . have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method." *Trinidad*, 2007 U.S. Dist. LEXIS 2914, at \*25 (collecting cases). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [the] Defendant." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011).

Not only would a class action in the instant case allow for a "more cost-efficient and fair litigation of common disputes" than individual actions, but "it is likely the only device by which

24

many of the proposed class members would obtain relief." *Garcia*, 281 F.R.D. at 108; *Martinez*, 2016 U.S. Dist. LEXIS 25556, at *42. *See Iglesias-Mendoza*, 239 F.R.D. at 373 (finding it "extremely unlikely" that proposed class members would pursue separate actions where they were "almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system"); *Perez v. Allstate Ins. Co*., No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214, at *67 (E.D.N.Y. Sep. 16, 2014). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

   **G.    Plaintiffs' Counsel Should Be Appointed as Class Counsel**

   Rule 23(g) requires that an attorney appointed to serve as class counsel "must fairly and adequately represent the interests of the class." Plaintiffs' counsel has been approved as class counsel in over 60 class actions and is amply serving the interest of the Class.[4]

**III.    CONCLUSION**

   For the foregoing reasons, Plaintiffs have satisfied all of the requirements under Fed. R. Civ. P. 23. Therefore, Plaintiffs respectfully request that Plaintiffs' motion for class certification be granted in its entirety.

---

[4] *See, e.g.*, *Velez v. 111 Atlas Rest. Corp.*, No. 14 Civ. 6956, 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016) (certifying Rule 23 class action); *Martinez v. Ayken, Inc*., No. 13 Civ. 7411, 2016 U.S. Dist. LEXIS 25556 (E.D.N.Y. Feb. 29, 2016) (certifying Rule 23 class action); *Chen v. Xpresspa at Term. 4 JFK, LLC*, No. 15 Civ. 1347, 2016 U.S. Dist. LEXIS 20003 (E.D.N.Y. Feb. 16, 2016); (conditionally certifying nationwide FLSA collective action); *Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335, 2013 U.S. Dist. LEXIS 27792 (S.D.N.Y. Feb. 27, 2013) (certifying Rule 23 class action); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013) (conditionally certifying FLSA collective action); *Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) (certifying Rule 23 class action); *Han v. Sterling Nat'l Mortg. Co.*, No. 09 Civ. 5589, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sep. 14, 2011) (certifying Rule 23 class action).

Dated: New York, New York                    Respectfully submitted,

      December 16, 2019                    LEE LITIGATION GROUP, PLLC

                            By:    */s/ C.K. Lee*

                                 C.K. Lee, Esq. (CL 4086)
                                 Lee Litigation Group, PLLC
                                 148 West 24th Street, Eighth Floor
                                 New York, NY 10011
                                 Tel: (212) 465-1188
                                 Fax: (212) 465-1181

                                 *Attorneys for Plaintiffs, FLSA Collective*
                                 *Plaintiffs and the Class*