UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                             :

BAIRON ORELLANA, et al.              :
                                             :

                      Plaintiffs,  :

                                             :

        - against -             :

                                             :

ONE IF BY LAND RESTAURANT LLC,  :
and DAVID GHATANFARD        :

                                           :

                    Defendants.  :
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____9/27/2020_____

18-CV-7865 (VSB)

**OPINION & ORDER**

Appearances:

C.K. Lee
Anne Melissa Seelig
Lee Litigation Group, PLLC
New York, NY
*Counsel for Plaintiffs*

Neal Sanford Comer
Neal S. Comer, Attorney at Law
White Plains, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiffs Kirk Adair, Bairon Orellana, and Juan Carlos Ortiz (together "Plaintiffs") bring

this Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, and New York Labor Law

("NYLL") action on behalf of themselves and others similarly situated.  Plaintiff Adair further

alleges unlawful discrimination under the New York State Human Rights Law, New York

Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative

Code of the City of New York § 8-502 ("NYCHRL").  Before me is Plaintiffs' motion to certify

their NYLL claim as a class action pursuant to Federal Rule of Civil Procedure 23.  (Doc. 40.)

Also before me is Plaintiffs' motion for partial summary judgment pursuant to Federal Rule of

Civil Procedure 56, (Doc. 43), as well as Defendant David Ghatanfard's ("Ghatanfard" and together with Defendant One If By Land Restaurant LLC, "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (Doc. 64). For the reasons that follow, Ghatanfard's motion is DENIED, Plaintiffs' motion for class certification is GRANTED, and Plaintiffs' motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART.

## I.   __Factual Background__

### A.  *Threshold Issues*

Defendants' Local Civil Rule 56.1 statement, filed at Document 60, fails to comply with Local Rule 56.1 and Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(c)(1)(a) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."); Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). Indeed, other than filing a declaration from Defendant Ghatanfard, (Docs. 62, 64), and a declaration from employee Lisa Gardner, (Doc. 61), Defendants have not identified or cited any summary judgment evidence in support of the statements made in their Local Civil Rule 56.1 statement. Additionally, Defendants have failed to file a memorandum of law in opposition to Plaintiffs' motion for partial summary judgment, and therefore I do not have the benefit of Defendants' legal arguments with respect to their liability. Accordingly, I review Plaintiffs'

Local Civil Rule 56.1 factual statements examining "the citation[s] to evidence in the record" to make sure that the evidence "supports the assertion[s]" made by Plaintiffs, *Vermont Teddy Bear Co. v. 1-800 Beargram Co*., 373 F.3d 241, 244 (2d Cir. 2004), and find certain facts undisputed unless otherwise indicated in the factual summary below.  I also note that throughout their Local Civil Rule 56.1 statement, Defendants do not dispute certain paragraphs in Plaintiffs' Local Civil Rule 56.1 statement.  As a threshold finding, I deem the following paragraphs in Plaintiffs' Local Civil Rule 56.1 statement undisputed:  7, 8, 13–18, 22–26, 32, 37–40, 51, 67, 68.

### B.  *Undisputed Facts*

Defendant One If By Land Restaurant LLC (the "LLC") was organized under the laws of the State of New York on December 26, 2014, and has owned and operated the Restaurant known as One If By Land, Two If By Sea (the "Restaurant") since on or about February of 2015.  (Pl. 56.1 ¶¶ 1–2; Ex. A.)[1]  Defendant Ghatanfard is a minority investor in the LLC owning approximately thirty-three percent interest in the LLC.  (Ghatanfard Decl. ¶¶ 2–3; Pl. 56.1 ¶¶ 1–2.)

Plaintiff Bairon Orellana ("Orellana") was employed at the Restaurant as a food runner from on or about May 31, 2016 to on or about September 25, 2017.  (Pl. 56.1 ¶¶ 7–8.)  Throughout his employment with Defendants, with the exception of October 2016 through December 2016, Orellana regularly worked from approximately 3:30 p.m. to 11:00 p.m., four days per week.  (*Id.* ¶ 9.)[2]  Orellana occasionally worked more than forty hours per week.  (*Id.* ¶

---

[1] "Ghatanfard Decl." refers to the Declaration of David Ghatanfard submitted as part of Ghatanfard's motion for summary judgment.  (Doc. 64.)  "Pl. 56.1" refers to the Local Civil Rule 56.1 statement filed by Plaintiffs in support of their motion for summary judgment.  (Doc. 44.)

[2] Orellana claims to have worked from approximately 3:30 p.m. to 11:00 p.m., six days per week, from October 2016 through December 2016, (*id.* ¶ 10), and claims to have additionally worked a double shift approximately twice a month, from approximately 10:00 a.m. to 11:00 p.m., over a spread of ten hours, (*id.* ¶ 11), but I find these assertions disputed.  During the Deposition of Maria Margilaj, the front of the house manager of the Restaurant,

12.)  In 2016, Orellana worked a minimum of 887.26 regular hours, and a minimum of 33.08

overtime hours, and was paid at an hourly rate of $7.50 per hour, up to forty hours per week, and

at an hourly rate of $12.00 per overtime hour, for hours over forty per week.  (*Id.* ¶¶ 13, 15.)  In

2017, Orellana worked a minimum of 899.46 regular hours, and a minimum of 12.53 overtime

hours, and was paid at an hourly rate of $7.50 per hour, up to forty hours per week, and at an

hourly rate of $12.35 per overtime hour, for hours over forty per week.  (*Id.* ¶¶ 14, 16.)

Plaintiff Juan Carlos Ortiz ("Ortiz") was employed at the Restaurant as a food runner

from in or about June 2016 to on or about June 1, 2017.  (*Id.* ¶¶ 17–18.)[3]  Throughout his

employment with Defendants, Ortiz additionally worked a double shift four to five times per

month, from approximately 10:00 a.m. to 1:00 a.m., over a spread of ten hours. (*Id.* ¶ 21.)  Ortiz

occasionally worked more than forty hours per week.  (*Id.* ¶ 22.)  In 2016, Ortiz worked a

minimum of 614.99 regular hours, and was paid at an hourly rate of $7.50 per hour, up to forty

hours per week, and at an hourly rate of $12.00 per overtime hour, for hours over forty per week.

(*Id.* ¶¶ 23, 25.)  In 2017, Ortiz worked a minimum of 246.24 regular hours, and was paid at an

hourly rate of $7.50 per hour, up to forty hours per week, and at an hourly rate of $12.35 per

overtime hour, for hours over forty per week.  (*Id.* ¶¶ 24, 26.)

Plaintiff Kirk Adair ("Adair") was employed by the Restaurant as a sommelier from at

least 1996 to on or about June 10, 2016.  (*Id.* ¶¶ 27–28.)  Throughout his employment with

Defendants, Adair regularly worked at least 79 hours per week, from 1:00 p.m. to 1:00 a.m.

---

Margilaj states that Orellana's claimed hours were not accurate.  (*See* Margilaj Dep. 38:23–39:18.)  "Margilaj Dep." refers to the July 9, 2019 deposition transcript of Maria Margilaj, Exhibit A to Plaintiffs' memorandum of law in opposition to Defendants' motion for summary judgment.  (Doc. 67-1.)

[3] Ortiz claims that, throughout his employment with Defendants, with the exception of October 2016 through December 2016, Ortiz regularly worked from approximately 3:30 p.m. to 12:00 p.m., four to five days per week, and from October 2016 through December 2016, worked from approximately 3:30 p.m. to 12:00 p.m., six days per week, (*id.* ¶¶ 19–20), but I find these assertions disputed by the deposition testimony of Margilaj, (Margilaj Dep. 40:9–41:18).

Tuesdays through Sundays, overnight on Fridays from 1:00 a.m. to 12:00 p.m. on Saturdays, and from 12:00 p.m. to 4:00 p.m. on Mondays and Tuesdays. (*Id.* ¶ 29.) Adair regularly worked more than forty hours per week. (*Id.* ¶ 30.) In 2015, Adair worked a minimum of 1765 regular hours, and a minimum of 127 overtime hours, and in 2016, he worked a minimum of 920 regular hours. (*Id.* ¶¶ 31–32.) In 2015, Adair was paid at an hourly rate of $5.00 per hour, up to forty hours per week, and at an hourly rate of either $7.50 or $9.38 per overtime hour, for hours over forty per week. (*Id.* ¶ 33.) In 2016, Adair was paid at an hourly rate of $7.50 per hour, up to forty hours per week, and at an hourly rate of $12.00 per overtime hour, for hours over forty per week. (*Id.* ¶ 34.) Throughout Adair's employment, he was additionally paid a flat rate of $250 per week for his position as a sommelier. (*Id.* ¶ 35.)

Defendants implemented the same employment policies to all non-exempt tipped employees at the Restaurant. (*Id.* ¶ 37.) At all relevant times, Lisa Gardner was in charge of payroll at the Restaurant, and all questions at Defendants' Restaurant regarding compensation was directed at Gardner. (*Id.* ¶ 38.) At all relevant times, Gardner did not have a law degree and she was not an accountant. (*Id.* ¶ 39.) Gardner did not make any decisions as to work schedules or rates of pay. (Gardner Decl. ¶ 5.)[4] At all relevant times, Gardner was unable to explain the requirements of a tip credit and was unaware of the spread of hours requirement. (Pl. 56.1 ¶ 40.)

Defendants paid all non-exempt tipped employees at the Restaurant, including servers, bussers, food runners, sommeliers, and bartenders, on an hourly basis. (*Id.* ¶ 42.) In 2015, Defendants paid an hourly rate of $5.00, and an hourly overtime rate of $7.50 or $9.38. (*Id.* ¶¶ 43–44.) In 2016, Defendants paid an hourly rate of $7.50, and an hourly overtime rate of $12.00.

---

[4] "Gardner Decl." refers to the Declaration of Lisa Gardner filed by Defendants in opposition to Plaintiffs' motion for partial summary judgment. (Doc. 61.)

(*Id.* ¶ 45.)  In 2017, Defendants paid an hourly rate of $7.50, and an hourly overtime rate of $12.35.  (*Id.* ¶ 46.)  In 2018, Defendants paid an hourly rate of $8.65, and in 2019 paid an hourly rate of $10.00.  (*Id.* ¶¶ 47–48.)  Throughout their employment with Defendants, Plaintiffs received only one pay notice upon the later of either February 2015 or hiring.  (*Id.* ¶ 49.)[5] Defendants provided the same pay notice form to all nonexempt tipped employees upon hiring, except that the regular rate of pay listed in the notice was the prevailing tip credit minimum wage rate, and the overtime rate of pay was the prevailing tip credit overtime wage rate.  (*Id.* ¶ 51.) Defendants' pay notice form informed all tipped employees from 2015 through 2019 that "[f]or food service workers, the tip credit taken will be $2.50 per hour.  Accordingly, you will be paid a tipped minimum wage of $5.00 per hour, and an overtime rate of $9.63."  (*Id.* ¶ 55.)  From 2015 through 2019, Defendants' notice further stated that "[i]f you do not receive enough tips over the course of a week to bring you up to the minimum hourly rates of $8.75 per hour for the first 40 hours and $9.63 per hour for hours over 40, you will be paid additional wages that week to make up the difference."  (*Id.* ¶ 56.)

Plaintiffs were required to perform nontipped side work between their clock-in times and the beginning and end of Defendants' actual dinner service hours, including washing dishes, stocking supplies from deliveries to the basement, transferring supplies and ingredients from Defendants' Restaurant to Defendant Ghatanfard's other restaurant, cleaning the restaurant, preparing food in the kitchen, setting up furniture for events, cleaning up and rearranging furniture after events, responding to restaurant emails and press articles, checking and cleaning the bathrooms, among other tasks.  (*Id.* ¶¶ 70–74.)  Plaintiffs also worked a spread of ten or more

---

[5] Examples of these pay notices are available at Plaintiffs' Exhibits J–L to the Declaration of C.K. Lee, (Doc. 46), filed as a composite document at Document 45-2.

hours but were not paid a spread of hours premium.  (*Id.* ¶ 75.)

## II.    **Procedural History**

Plaintiffs filed the Class and Collective Action Complaint ("Complaint") on August 28, 2018.  (Doc. 1.)  Defendants filed their Answer on October 26, 2018.  (Doc. 12.)  After various discovery-related disputes, on December 16, 2019, Defendant Ghatanfard filed a motion for summary judgment, (Doc. 39), which I denied without prejudice on January 28, 2020, for failure to comply with the local rules, (Docs. 58, 59).  On December 16, 2019, Plaintiffs filed the instant motion to certify a class, supported by a memorandum of law and a declaration.  (Docs. 40–42.)  On the same day, Plaintiffs also filed a motion for partial summary judgment, supported by a Local Civil Rule 56.1 statement, a memorandum of law, and four declarations.  (Docs. 43–49, 51.)[6]  On January 31, 2020, Defendants filed a deficient Local Civil Rule 56.1 statement in opposition to Plaintiffs' motion for partial summary judgment, and a declaration, (Docs. 60, 61), and also filed a declaration in opposition to Plaintiffs' motion to certify a class, (Doc. 63).  On February 11, 2020, Ghatanfard refiled his motion for summary judgment in accordance with my January 28, 2020 Order.  (Doc. 64.)[7]  On February 14, 2020, Plaintiffs filed a reply memorandum of law in support of their motion to certify a class, and also filed a reply memorandum of law in support of their motion for partial summary judgment.  (Docs. 65, 66.)  On February 25, 2020, Plaintiffs filed a memorandum of law in opposition to Ghatanfard's motion for summary judgment, supported by a Local Civil Rule 56.1 statement.  (Docs. 67, 68.)  Ghatanfard did not file a reply.

---

[6] On January 15, 2020, Plaintiffs filed a revised declaration at Document 51, and noted that a previously filed declaration at Document 49 was an incorrectly filed draft.

[7] I note that Ghatanfard's refiled motion for summary judgment still does not comply with local rules, as noted by the March 2, 2020 Deficient Docket Entry Error notice.

### III.  **Legal Standards**

#### A.  *Class Certification*

Class certification is governed by Federal Rule of Civil Procedure 23, which requires that the party seeking certification "has satisfied the four prerequisites of Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation."  *Marisol v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).  Additionally, a party seeking class certification must also demonstrate that at least one of the three criteria enumerated in Rule 23(b) is satisfied.  *Id*. at 376.  Here, Plaintiffs have sought certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual class members."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) also requires that the court find "that a class action is superior to other available methods of adjudication."  *Id*.  "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir.2013) (internal quotation marks omitted).  The rule lists four nonexclusive factors which go to the heart of this inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. at 23(b)(3)(A)–(D).

In contrast to the "some showing" standard for collective certification under FLSA, putative class representatives must show that the certification requirements are met by a preponderance of the evidence.  *See Teamsters Local 445 Freight Div. Pension Fund v.*

*Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  When making the Rule 23 determination,

district courts must "assess all of the relevant evidence admitted at the class certification stage."

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quoting *In re*

*Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006)).  As the Second Circuit has

stated:

> (1) a district judge may certify a class only after making determinations that each
> of the Rule 23 requirements has been met; (2) such determinations can be made
> only if the judge resolves factual disputes relevant to each Rule 23 requirement and
> finds that whatever underlying facts are relevant to a particular Rule 23 requirement
> have been established and is persuaded to rule, based on the relevant facts and the
> applicable legal standard, that the requirement is met; (3) the obligation to make
> such determinations is not lessened by overlap between a Rule 23 requirement and
> a merits issue, even a merits issue that is identical with a Rule 23 requirement; [and]
> (4) in making such determinations, a district judge should not assess any aspect of
> the merits unrelated to a Rule 23 requirement . . . .

*Id.* (quoting *In re Initial Public Offerings Sec. Litig.*, 471 F.3d at 41).

### B.  *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P.

56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at

256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). "The principles governing admissibility of evidence do not change on a motion for summary judgment" and district courts need only consider admissible evidence in ruling on a motion for summary judgment." *I.M. v. United States*, 362 F. Supp. 3d 161, 174 n.9 (S.D.N.Y. 2019) (quoting *Raskin v. Wyatt Company*, 125 F.3d 55, 66 (2d Cir. 1997)).

In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3); *see also* Fed. R. Civ. P. 56(c)(1)(a) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials."); Local Rule 56.1(d) ("Each statement by the movant

or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any

statement of material fact, must be followed by citation to evidence which would be admissible,

set forth as required by Fed. R. Civ. P. 56(c).").  However, "where the movant 'fail[s] to fulfill

its initial burden' of providing admissible evidence of the material facts entitling it to summary

judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is

presented,' for the non-movant is not required to rebut an insufficient showing."  *Giannullo v.*

*City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) (quoting *Adickes v. S.H. Kress & Co*.,

398 U.S. 144, 160 (1970)).  "Moreover, in determining whether the moving party has met this

burden of showing the absence of a genuine issue for trial, the district court may not rely solely

on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It

must be satisfied that the citation to evidence in the record supports the assertion."  *Vermont*

*Teddy Bear Co.*, 373 at 244.

## IV.   Discussion

### A.  *Class Certification*

Plaintiffs bring these NYLL claims on behalf of themselves and all former and current

non-exempt tipped employees, including servers, bussers, food runners, sommeliers, bartenders,

among others, employed by Defendants at the Restaurant on or after January 1, 2015 ("Class

Members" or the "Class").  For the reasons that follow, I grant Plaintiffs' motion to certify the

class.

#### 1.  Rule 23(a) Requirements

##### a.  Numerosity

To meet the requirements of Rule 23(a)(1), the class must be so large that joinder of all

members would be impracticable.  *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992).  In this Circuit, numerosity is presumed at forty putative class members. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  "Generally speaking, courts will find that the 'numerosity' requirement . . . has not been satisfied when the class comprises [twenty-one] or fewer.  However, these are not rigid parameters . . . ." *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (citations omitted).  "[I]n cases falling into the gray area between [twenty-one] and [forty] class members, courts must consider factors other than class size." *Id.*  "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Grant v. New York Times Co.*, 329 F.R.D. 27, 31 (S.D.N.Y. 2018) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

Plaintiffs represent that "[b]ased on Defendants' Payroll Records for the calendar years 2016 and 2017, there are at least 53 non-exempt tipped employees" who fit the class definition. (Doc. 41, at 17.)  Based on my review of the evidence submitted in support of this assertion, Defendants' payroll records reflect fewer than 53 non-exempt tipped employees who worked at the Restaurant during 2016 and 2017, but more than 21.  (Doc. 45-2, Ex. I.)  This evidence, however, only includes the employees working at the Restaurant for the months of November 2016 and February 2017.  And, there is evidence that certain employees, such as Kirk Adair, worked for Defendants prior to these dates but within the class period.  Accordingly, although there is not clear evidence that the putative class is at least forty members large, the putative class is not so small as to fail the numerosity factor.  Additionally, looking at the payroll records

involved in this case, it is clear that a collective action would be more practicable and cost-effective than having each individual plaintiff bring suit, since the individual damages sustained by the putative class members appear to be small and it would be impractical for any one class member to bring a standalone suit.  Therefore, I find that the numerosity factor is satisfied.

b.  <u>Commonality</u>

Commonality requires that there be "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), that are "capable of classwide resolution" such that their "truth or falsity will resolve [the] issue[s] . . . in one stroke," *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In FLSA and NYLL wage claims, courts in this district focus on whether the employer had company-wide wage policies that injured the proposed class.  *See, e.g., Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011).  Moreover, "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification."  *Espinoza*, 280 F.R.D. at 127 (collecting cases).  Plaintiffs allege that the common issues of law and fact include Defendants': (1) failure to properly pay minimum wage and overtime and use of invalid tip credits; (2) failure to pay a spread of hours premium; (3) use of time shaving practices; (4) use of improper wage and hour notices; and (5) use of improper wage statements.  With respect to these allegations, Defendants concede that they implemented the same employment policies to all non-exempt tipped employees at the Restaurant.  (Pl. 56.1 ¶ 37; Gardner Dep. 13:2-23.)  Additionally, Gardner, who administered the payroll for the Restaurant in addition to being Defendants' Special Events Coordinator, confirmed that all tipped employees were paid at the same

prevailing hourly rates for tipped employees and were given the same wage notices.  (Gardner

Dep. 13:2-23).  The putative class members all worked as non-exempt tipped employees at the

same restaurant, over a similar period of time, and worked in similar capacities as servers,

bussers, food runners, sommeliers, and bartenders.  Therefore, I find that Plaintiffs have

submitted sufficient evidence to satisfy the commonality requirement.

### c.  Typicality

"Typicality requires that the claims of the class representatives be typical of those of the

class, and is satisfied when each class member's claim arises from the same course of events, and

each class member makes similar legal arguments to prove the defendant's liability."  *Whitehorn*

*v. Wolfgang's Steakhouse, Inc*., 275 F.R.D. 193, 199 (S.D.N.Y. 2011) (citation and internal

quotation marks omitted).  "When it is alleged that the same unlawful conduct was directed at or

affected both the named plaintiff and the class sought to be represented, the typicality

requirement is usually met irrespective of minor variations in the fact patterns underlying

individual claims."  *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (citations omitted).

"As long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same

manner against all members of the class, they establish necessary typicality."  *Bolanos v.*

*Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y.2002) (citations and internal

quotation marks omitted).  Again, the putative class members each worked at the same restaurant

as Plaintiffs under similar working conditions, and are alleged to have suffered the same wage

and hour violations and notice requirements.  Accordingly, typicality is satisfied.

### d.  Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy of representation looks to

14

the qualifications of Plaintiffs' counsel and the interests of the named Plaintiffs.  *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  The adequacy inquiry "'is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.'"  *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312, 2016 WL 5338551, at *5 (S.D.N.Y. Sept. 23, 2016) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Here, Plaintiffs have stated their willingness and ability to act as class representatives. (Orellana Decl. ¶¶ 12–13; Ortiz Decl. ¶¶ 15–16; Adair Decl. ¶¶ 14–15.)[8]  Furthermore, reviewing Plaintiffs' declarations, Plaintiffs regularly commiserated with other putative class members concerning wage related issues and do not appear to have interests antagonistic to the other class members.  Indeed, consistent with my findings regarding commonality and typicality, Plaintiffs "possess the same interest and suffer[ed] the same injury shared by all members of the class [they seek to] represent [ ]," *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)), which is "strong evidence that Plaintiffs' interests are not antagonistic to those of the class [and that] the same strategies that will vindicate [P]laintiffs' claims will vindicate those of the class."  *Tiro v. Pub. House Investments, LLC*, 288 F.R.D. 272, 280 (S.D.N.Y. 2012) (internal quotations omitted).  Finally, "Plaintiffs' attorney counsel is experienced in similar wage and hour litigation on behalf of aggrieved New York City workers, has represented that he is willing to commit the necessary resources to represent the class, (*see*

---

[8] "Orellana Decl." refers to the Declaration of Bairon Orellana in support of Plaintiffs' motion for summary judgment and motion to certify.  (Doc. 47.)  "Ortiz Decl." refers to the Declaration of Juan Carlos Ortiz in support of Plaintiffs' motion for summary judgment and motion to certify.  (Doc. 48.)  "Adair Decl." refers to the corrected Declaration of Kirk Adai in support of Plaintiffs' motion for summary judgment and motion to certify.  (Doc. 51.)

Lee Decl. ¶[ ]9)[9], and has adequately pursued this claim." *Flores*, 284 F.R.D. at 129.  Therefore,

adequacy of representation is satisfied.

### 2.   Rule 23(b)(3) Requirements

Rule 23(b)(3) requires that "questions of law or fact common to class members

predominate over any questions affecting only individual class members," and "that a class

action is superior to other available methods of adjudication."  Fed. R. Civ. P. 23(b)(3).  Because

"some of the legal or factual questions that qualify each class member's case as a genuine

controversy can be achieved through generalized proof," for example, the Defendants' wage and

hour and notice policies as they applied to the putative class members, and because "these

particular issues are more substantial than the issues subject only to individualized proof," *In re*

*U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 118, such as class members' individualized

damages, I find that the predominance requirement is satisfied.  Considering the Rule 23(b)(3)

factors buttresses this conclusion.  First, the putative class members are likely to have a low

interest in individually controlling the prosecution of separate actions given the nature of this

case, the value of individual claims relative to the cost of maintaining the claims, and certain

members' current employment with Defendants.  Second, this is the first action brought on

behalf of the putative class members, and no others have been filed.  Third, concentrating the

litigation of the claims into one action benefits both Plaintiffs and Defendants, and Defendants

have already conceded that their tipped employee practices were uniform among the non-exempt

tipped employees at the Restaurant.  Finally, the difficulties in managing a NYLL class action

against a restaurant—which is relatively small in terms of both class size and the length of the

class period—are minimal.  Although damages will likely need to be calculated on an individual

---

[9] "Lee Decl." refers to the Declaration of C.K. Lee in support of Plaintiffs' motion to certify.  (Doc. 42.)

level, "the Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 123 n. 8); *see also Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 WL 1880919, at *11 (E.D.N.Y. May 6, 2013) (citations omitted) ("Although, the spread of hours compensation to which an individual is entitled will require an inquiry into the number of hours the individual worked and his rate of pay, such damages-related inquiries are 'mechanical' and do 'not threaten to overwhelm the litigation with individual factual determinations.'").

I also find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Schear*, 297 F.R.D. at 126  (citing *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (finding class action superior where the average claim was $560 and class members currently worked for the defendant); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (citations omitted) ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually. . . . In addition, since some class members are still employees of Defendants' [sic], class members may fear reprisal and would not be inclined to pursue individual claims.").

### 3.   Class Counsel

Rule 23(g)(1)(A) requires that district courts consider the following in appointing class

counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Based on the work counsel has undertaken to investigate Plaintiffs' claims, their efforts in litigating the case thus far, and their years of experience litigating similar actions as class counsel, I conclude that Lee Litigation Group, PLLC meets Rule 23(g)'s requirements, and appoint counsel as Class Counsel.

Accordingly, I find that Plaintiffs have met their burden under Rule 23 and therefore certify for purposes of Plaintiffs' NYLL claims Plaintiffs' proposed class of all former and current non-exempt tipped employees, employed by Defendants at the Restaurant on or after January 1, 2015.  I also appoint Plaintiffs as Class Representatives.

### 4.  Approval Proposed Class Notice

Rule 23(c)(2)(B) requires that:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Having reviewed the proposed notice, (Doc. 42-1,) I find that it is the best notice practicable under the circumstances and meets the requirements of due process. The proposed notice also meets all of seven elements enumerated in Rule 23(c)(2)(B).  However, Plaintiffs are directed to change the class definition in the notice to the following:  all non-

exempt tipped employees employed by One If By Land Restaurant LLC located at 17 Barrow Street, New York, New York 10014 at any time between January 1, 2015 and the present.

### B.   *Summary Judgment*

#### 1.   **Defendant Ghatanfard's Motion**

Defendant Ghatanfard's motion for summary judgment asks me to deny all claims against him on the basis that he is not an employer of Plaintiffs subject to liability under the FLSA or NYLL.  I find that a genuine dispute of material fact exists as to Ghatanfard's status as an employer, and therefore deny Ghatanfard's motion.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C.A. § 203(d).  To "employ" someone under the statute means to "suffer or permit to work."  *Id*. § 203(g).  Recognizing the "broad coverage" required to accomplish the FLSA's goals, the Supreme Court "has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citation omitted).  In assessing whether an individual or entity should be deemed an employer under the FLSA, the Second Circuit has adopted what is known as the "economic reality test."  *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).  This test does not adhere to rigid formulations or labels to determine the existence of an employer/employee relationship.  *Id*. at 143.  Rather, the inquiry focuses on the relationship between the purported employer and employee, asking how much authority the "employer" exercised over the "employees."  *Id*.  This test focuses on the four *Carter* factors,[10] and has also been construed to include assessment of the following functional

---

[10] The *Carter* factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2)

factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 n.19 (2d Cir. 2017) (citing *United States v. Silk*, 331 U.S. 704 (1947)).  No single factor is dispositive; instead, any determination regarding an alleged employment relationship must be based on the totality of the circumstances. *See Barfield*, 537 F.3d at 141 ("[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity.") (internal citations omitted).[11]

Ghatanfard's motion is made on the basis of one self-serving declaration that states the following:

> 2.  The restaurant known as One If By Land Two If By Sea has been owned and operated by the defendant entity ONCE IF BY LAND RESTAURANT, LLC (the company) since on or about February of 2015.
>
> 3.  I am a minority investor in the that LLC; my interest therein is approximately thirty-three (33%) percent.
>
> 4.  I have no management or supervisory responsibilities in the company and since

---

supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).  The Second Circuit has stated that while satisfaction of the four factors in *Carter* "can be sufficient to establish employment status," satisfaction of the four factors is not necessary to so hold.  *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003)).

[11] Ghatanfard does not distinguish between the FLSA and NYLL for purposes of his motion.  Accordingly, my conclusion that a question of fact exists as to whether Ghatanfard is an employer under FLSA applies equally to Plaintiffs' NYLL claims.  I note that neither the New York Court of Appeals nor the Second Circuit has decided whether "the tests for 'employer' status are the same under the FLSA and the NYLL."  *Irizarry*, 722 F.3d at 117.  However, my review of the law reveals that the tests are similar enough for purposes of the instant motion that my conclusion is no different with respect to Plaintiffs' NYLL claims.

the inception of the company have not had such responsibilities.

5.  I have no authority to make decisions regarding hiring or firing of employees
and I am not, and have not been, involved in the making of any such decisions.

6.  I have no authority to make decisions regarding the rate of pay of any employee
of the company and have not done so since the inception of the business.

7.  I have no authority to decide or determine the work schedule of any employee
and have not done so since the inception of the business.

8.  I do not keep or maintain any payroll or other records of the company and have
not done so since the inception of the business.

9.  I am not involved in the day-to-day operations of the company and, since the
company became the owner of the restaurant I have only rarely visited the location.

10.  I was not involved in the hiring or firing of any of the plaintiffs, nor was I
involved in setting any of their work schedules.

11.  I was not involved in, not did I have any part in the decisions complained of
by plaintiffs herein.

12.  ONE IF BY LAND RESTAURANT, LLC. was formed on or about December
26, 2014 and took over operation of the restaurant on or about February 15, 2015.
Prior to those dates I had no connection to the restaurant and since those dates I
have had no involvement in the operation and management of the company.

(Ghatanfard Decl.)  In opposition, Plaintiffs filed a Local Rule 56.1 statement identifying

portions of the Deposition of Maria Margilaj, the front of the house manager of One If By Land

Restaurant, LLC.  (*See* Margilaj Dep.)  Margilaj testified that she has worked at the Restaurant

for 29 years, five days a week.  (*Id.* 8:24; 9:19.)  When asked about Ghatanfard's involvement in

the Restaurant, Margilaj stated that she did not know how many days a week Ghatanfard worked

at the Restaurant, and that when she did see Ghatanfard they would only briefly discuss business.

(*Id.* 19:2–20:16.)  Margilaj admitted that if an employee wanted a raise, they would contact the

General Manager of the Restaurant and not Ghatanfard, (*id.* 20:17-22); however, Margilaj also

testified that Ghatanfard could fire or hire whoever he wanted, could give employees a raise if he

21

wanted, and had access to employment records, (*id.* 22:2-13). Additionally, Margilaj testified that Ghatanfard could give employees vacation time. (*Id.* 23:15-17.) Furthermore, there is evidence that when Ghatanfard initially became an owner of the Restaurant, "he started to change the schedule, so as to reduce overtime hours worked." (Adair Decl. ¶ 2.) On this record, Plaintiffs have satisfied their obligation to set forth specific facts showing that there is a genuine issue for trial, and have pointed to evidence that would support a finding in their favor. Accordingly, viewing the evidence in the light most favorable to Plaintiffs, Ghatanfard's motion is denied.[12]

## 2. Plaintiffs' Motion

Plaintiffs' partial motion for summary judgment seeks a finding of Defendants' liability on their various wage and hour and notice claims. Plaintiffs also seek a finding regarding the applicable statute of limitations finding, application of liquidated damages, and joint and several liability. For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

### a. Minimum Wage and Overtime Claims

Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage. *See* 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R. § 146–1.3(b); *Shahriar v. Smith & Wollensky Restaurant Grp.*, 659 F.3d 234, 239–40 (2d Cir.2011). This allowance against the minimum cash wage is known as a "tip credit." Plaintiffs contend that Defendants paid them an hourly wage that was below the

---

[12] For the same reasons, I deny Plaintiffs' motion for summary judgment on the issues of whether Ghatanfard was Plaintiffs' employer, and whether Defendants are jointly and severally liable, as there remain genuine disputes of material fact regarding these issues. However, because there is no dispute that Defendant One If By Land Restaurant LLC was Plaintiffs' employer, I grant Plaintiffs' motion for summary judgment on the issue of whether the Restaurant is an employer.

generally permissible minimum wage, without fulfilling federal and state law requirements to take a tip credit allowance.  It is undisputed that at all times during their employment, each plaintiff was paid below the minimum wage due to the use of a tip credit offset.  (*See* Gardner Dep. 14:5-10, 14:14-19 ("Q. So whatever the prevailing legal rate is – A. Right. Q. – for tipped employees, that's what you pay them, right? A. Correct . . . Q. So the understanding between the company and all the tipped employees is that whatever prevailing rate that's legal for the class of tipped employees, that would be their hourly pay rate, right? Yes.").)  Thus, Plaintiffs' wages were impermissibly low unless the Restaurant satisfied the requirements of the FLSA and NYLL to claim a tip credit.

i.      *Tip Credit Notice Requirements*

Under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting the tip credit.  29 U.S.C. § 203(m); *see, e.g.*, *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y.2011); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 228–29 (S.D.N.Y.2002).  "The employer 'bear[s] the burden of showing that [it] satisfied the FLSA's notice requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law.'"  *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (quoting *He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014) (internal quotation marks omitted)).  "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage . . . ."  *Id.*  The regulations implementing the NYLL also impose notice requirements upon an employer that desires to take a

tip credit, which include pay change, primary language, and record-keeping notice requirements. *See* 12 N.Y.C.R.R. § 146–2.2.  NYLL regulations similarly place the burden to demonstrate compliance on the employer.  *Id.* § 146–2.2(d).

Although Plaintiffs have identified Notice of Pay forms provided by Defendants at the start of their employment, these forms are incomplete, contain inaccurate pay dates and pay rates, were not updated with Plaintiffs' pay rate changes year to year, and do not include the requisite provisions informing Plaintiffs of the FLSA sections permitting tip credits.  (*See, e.g.*, Doc. 45-2, Ex. J–L.)  Similarly, there is no evidence that the notices were provided in Plaintiffs Orellana and Ortiz's primary spoken language, which is Spanish.  In an attempt to meet their burden, Defendants merely claim, with no record support, that "all non-exempt employees received required notices."  (Def. 56.1 ¶¶ 49–62.)  However, Gardner testified during her deposition that the only forms employees were given were the Notice of Pay forms submitted into evidence by Plaintiffs, and that no additional pay notice information was provided to employees.  (Gardner Dep. 29:2-4.)  "Because the employer has the ultimate burden to prove compliance with the tip credit notice requirement, an employer . . . must adduce definite competent evidence showing that waiters were informed of the tip credit."  *Inclan*, 95 F. Supp. 3d at 498 (internal quotations omitted).  Defendants have failed to do so, however, and Plaintiffs are entitled to summary judgment on the issue of whether Defendants provided sufficient notice to take a tip credit.

ii.     *Overtime Rate Calculation*

Both the FLSA and regulations issued pursuant to the NYLL require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty per work week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146–1.4.  For tipped employees,

the minimum overtime cash wage is the employee's regular rate of pay before subtracting any tip

credit, multiplied by one and one-half, minus the tip credit.  29 U.S.C. § 203(m); 29 C.F.R. §§

531.60, 778.5; 12 N.Y.C.R.R. § 146–1.4.  Thus, under both federal and state law, "[i]t is a

violation of the overtime requirement for an employer to subtract the tip credit first and then

multiply the reduced rate by one and one half."  *Inclan*, 95 F. Supp. 3d at 498–99 (quoting 12

N.Y.C.R.R. § 146–1.4).  "In determining whether the plaintiffs received the minimum wage and

overtime, we start with the premise that the employer is obligated to maintain records of wages

and hours."  *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254–55 (S.D.N.Y. 2008) (citing

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)) (emphasis added).  "In the

absence of documentation, the employee may rely on [their] own recollection to meet [their]

initial burden, in which case the employer must proffer evidence sufficient to rebut that

recollection."  *Id.  See also* N.Y. Lab. L. § 196-a ("the employer in violation shall bear the

burden of proving that the complaining employee was paid wages, benefits and wage

supplements").

Plaintiffs' affidavits, pay records, and Notice of Pay forms indicate that Defendants

improperly calculated overtime rates during certain periods.  For example, in 2015, Defendants

paid Plaintiff Adair at overtime rates of either $7.50 or $9.38.  (Doc. 45-2, Ex. H.)  In 2017,

Defendants paid Plaintiff Orellana at an overtime rate of $12.35, when the tip credit overtime

rate was $13.00.  (Pl. 56.1 ¶¶ 14, 16.)  Additionally, the Notice of Pay forms indicate that

overtime rates were improperly calculated for Plaintiff Ortiz in 2016.  (*Id.* Ex. L.)  It is clear that,

at least on certain occasions, Defendants did not properly calculate Plaintiffs' overtimes rates.

Accordingly, Defendants cannot claim the benefit of a tip credit allowance for these periods, and

furthermore are liable for any unpaid overtime wages during these periods.  However, the exact

25

determination of the time periods in question will need to be resolved at trial.

iii.     *Non-Tipped Side Work*

Under the FLSA, "tipped employees who spend a substantial amount of time, or more than twenty percent of their [working time], engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Chhab v. Darden Restaurants, Inc*., No. 11 CIV. 8345 NRB, 2013 WL 5308004, at *3 (S.D.N.Y. Sept. 20, 2013).  New York law goes even further.  Indeed, if a tipped employee performs non-tipped work "(a) for two hours or more, or (b) for more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day."  12 N.Y.C.C.R. § 146–2.9.

Plaintiffs' declarations each state that they were required to spend extensive hours performing non-tipped work.  (Orellana Decl. ¶¶ 3, 8; Ortiz Decl. ¶¶ 4, 9; Adair Decl. ¶¶ 4, 6, 10.)  In addition, based on the time records submitted by Plaintiffs, there were many instances in in which employees clocked-in multiple hours before, and clocked-out multiple hours after, the Restaurant's kitchen and serving hours.  (Doc. 45-2, Ex. I.)  This evidence is consistent with the deposition testimony of the Restaurant's manager, who testified that while business hours were from 3:00 p.m. to 11:00 p.m., the kitchen closed at 9:30 p.m. on weekdays and 10:30 p.m. on weekends, although customers could stay late at the bar.  (Margilaj Dep. 11:3-16.)  Plaintiffs also provided evidence that the Restaurant's operating hours are Sundays through Thursdays from 5:30 p.m. to 9:30 p.m. and from Fridays and Saturdays from 5:15 p.m. to 10:30 p.m.  (Doc. 45-2, Ex. N.)  Accordingly, I find that there is no genuine dispute that there were certain periods of time in which Plaintiffs' performed non-tipped side work, the exact determination of which is to be determined at trial.

b.  <u>Wage Theft Prevention Act</u>

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an employer must provide wage notices to employees containing required information, including certain information required by the NYLL's tip credit notice requirement.  *See* N.Y. Lab. L. § 195(1-a). Beginning April 9, 2011, the WTPA required employers to provide written wage notices "at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer."  N.Y. Lab. L. § 195(1-a).  By an amendment to the WTPA, effective February 27, 2015, that provision changed to require employers to provide written wage notices only "at the time of hiring."  2014 N.Y. L. ch. 537 § 1, amending N.Y. Lab. L. § 195(1-a).  For the reasons stated in Part IV.B.2.a.i., I find that Defendants' Notice of Pay forms were deficient and not in accordance with the NYLL's requirements.

The WTPA also includes wage statement requirements, which requires employers to "furnish each employee with a statement with every payment of wages, listing the following information: (1) the dates of work covered by that payment of wages; (2) the employee's name; (3) the employer's name, address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6) deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages."  *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (quoting N.Y. Lab. Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL 5474093, at *10–11 (S.D.N.Y. Sept. 18, 2015).  Plaintiffs submitted sample wage statements at Document 45-1, Exhibit F, and Gardner confirmed at her deposition that these statements were representative of the wage statements received by all tipped employees.  (Gardner Dep. 23:14-21) ("Q. And again, the paystubs for all the employees would have the same form, right?  A. Yes.").)  Reviewing the wage statements, I find that they do not

conform to the WTPA's requirements.  The pay statements list a tipped hours and tipped overtime hours pay rate, but do not include a rate for the earnings category labelled "regular." Similarly, although the wage statements include the amount of tips earned, and the total tip credit retained for the pay period, the statements do not indicate the tip credit rate claimed as an allowance to the regular minimum wage, which is not listed.  *See Inclan*, 95 F. Supp. 3d at 502 (statements inadequate where they "did not show the total amount of the tip credit allowance taken nor the employee's gross wages before tip credit allowance," and failed to list the per-hour tip credit amount); *Salinas*, 123 F. Supp. 3d at 475; *Copantitla*, 788 F. Supp. 2d at 290 ("Both the pay statements and the payroll records show only that plaintiffs earned tip-related income; they do not record that any of the tip income was claimed as part of the minimum wage."). Accordingly, Plaintiffs have demonstrated Defendants' violation of the wage statement sections of the WTPA.[13]

"As many judges in this District have held, the WTPA does not apply retroactively." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 510 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).  Thus, "an employee who began working before the WTPA took effect on April 9, 2011, may not bring a claim for an employer's [violations]."  *Canelas v. A'Mangiare Inc.*, No. 13 Civ. 3630 (VB), 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015).

Although Plaintiff Adair worked at the Restaurant prior to the passage of the WTPA, the ownership of the restaurant changed once Defendant One If By Land Restaurant LLC was created and took over ownership of the Restaurant in early 2015.  (Pl. 56.1 ¶¶ 1–2; Ex. A.) Furthermore, the WTPA's wage statement obligations apply to "employer[s]," who may change as they did in this case with Defendants' employment of Adair once they purchased the

---

[13] This is an independent basis on which to conclude that Defendants cannot avail themselves of the tip credit.

Restaurant.  N.Y. Lab. L. § 195(1-a).  Accordingly, I find that any cause of action under the WTPA brought by Plaintiff Adair against Defendants would not be a retroactive application of the statute, and may proceed.

### c.   Spread-of-Hours Premium

Under the regulations implementing the NYLL, a restaurant employee is entitled to an additional hour of pay at the minimum hourly rate "[o]n each day on which the spread of hours exceeds [ten]."  12 N.Y.C.R.R. § 146–1.6(a).  The term "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday. . . . includ[ing] working time plus time off for meals plus intervals off duty."  *Id.*  The payroll records and affidavits submitted by Plaintiff demonstrate that Plaintiffs could be entitled to the spread-of-hours premium, and Gardner, who was in charge of administering payroll for the Restaurant, testified that she was unaware of the spread-of-hours requirement.  (Gardner Dep. 11:23-25.) Accordingly, I grant Plaintiffs' motion for summary judgement as to Defendants' liability for failing to pay a spread-of-hours premium.  Again, the exact damages to which Plaintiffs are entitled for these violations is to be determined at trial.

### d.   Liquidated Damages

Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages.  See 29 U.S.C. § 216(b) ("Any employer who violates [the overtime provisions of the FLSA] shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").  The Portal–to–Portal Act, 29 U.S.C. § 251 *et seq*., which amended the FLSA, affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective "good

faith" with objectively "reasonable grounds" for believing that its acts or omissions did not violate the FLSA.  *Id*. § 260.  The Second Circuit "has characterized the employer's burden as 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception.'"  *Barfield v. New York City Health & Hosps. Corp*., 537 F.3d 132, 150 (2d Cir. 2008) (quoting *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 142 (2d Cir. 1999)); *see also Reich v. S. New England Telecomm. Corp*., 121 F.3d 58, 71 (2d Cir.1997).  "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'"  (*Barfield*, 537 F.3d at 150 (quoting *Herman*, 172 F.3d at 142)).  The NYLL similarly provides for liquidated damages, and "courts have not substantively distinguished the federal standard from [the NYLL standard]."  *Inclan*, 95 F. Supp. at 505.  By failing to file a proper opposition memorandum and a proper Local Civil Rule 56.1 statement with supporting evidence, Defendants have failed to meet the high burden of establishing subjective good faith; therefore, I grant Plaintiffs' motion for summary judgment on the issue of liquidated damages.[14]

### e.  Statute of Limitations

The statute of limitations for FLSA actions is two years, or three years in cases of willful violations.  29 U.S.C. § 255.  "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the [FLSA]."  *Young v. Cooper Cameron Corp*., 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "The burden is on the employee to show willfulness."  *Id*.

---

[14] As other courts in this district have done, I find that "cumulative liquidated damages are inappropriate," in other words, Plaintiffs are not entitled to an award of liquidated damages under both the FLSA and NYLL.  *Inclan*,95 F. Supp. 3d at 505–06.

Plaintiffs have not met their burden of showing willfulness.  Plaintiffs adduced insufficient evidence regarding defendants' state of mind, so as to establish that defendants knew their conduct was prohibited by the FLSA, or that they consciously disregarded the risk that it was prohibited.  "An employer's actions, even if unreasonable, cannot be held willful absent a showing of recklessness."  *Hernandez v. Jrpac Inc*., No. 14 CIV. 4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (citing *McLaughlin*, 486 U.S. at 135 n.13).  Plaintiffs argue that, as a matter of law, failing to consult an attorney regarding proper wage and hour compliance when one does not know the requirements of a tip credit or spread of hours pay constitutes willfulness.  I disagree, and here, there is insufficient evidence beyond the violations themselves for Plaintiffs' to meet their burden on summary judgment.  Accordingly, I find that a genuine dispute of material fact remains as to this issue that will need to be resolved prior to concluding whether a two or three-year statute of limitations applies to Plaintiffs' FLSA claims.

### V.    Conclusion

For the foregoing reasons, it is hereby:

ORDERED that Defendant Ghatanfard's motion for summary judgment, (Doc. 64), is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' motion to certify a class, (Doc. 40), is GRANTED, and Plaintiffs shall proceed to distribute the opt-out notice form to class members. However, Plaintiffs are directed to change the class definition in the notice to the following:  all non-exempt tipped employees employed by One If By Land Restaurant LLC located at 17 Barrow Street, New York, New York 10014 at any time between January 1, 2015 and the present.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment, (Doc.

43), is GRANTED IN PART AND DENIED IN PART.  Specifically, Plaintiffs' motion for

partial summary judgment on the issues of whether Defendant Ghatanfard is/was Plaintiffs'

employer, Defendants' joint and severally liability, and the statute of limitations is DENIED

WITHOUT PREJUDICE.  Plaintiffs' motion is GRANTED with respect to Defendants' liability

for Plaintiffs' minimum wage and overtime claims, WTPA claims, spread-of-hours premium

claims, and the issue of liquidated damages.  The application of these liability findings as to

Defendant Ghatanfard is contingent on Plaintiffs' proving at trial that Ghatanfard is/was

Plaintiffs' employer within the meaning of the FLSA and NYLL.

The Clerk of Court is directed to terminate the open motions at Documents 40, 43, and

64.

The parties are directed to meet and confer, and file a joint status update within thirty

(30) days, informing the court of the following:

(i)     whether the parties will consent to proceed in front of the magistrate judge to
determine any outstanding issues;

(ii)    whether the parties are willing to conduct a settlement conference in front of the
magistrate judge; and

(iii)   whether, to the extent a trial is necessary, the parties will consent to a bench trial.

SO ORDERED.

Dated:  September 22, 2020
        New York, New York

Vernon S. Broderick
United States District Judge